**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
JOANNE BENTIVEGNA,
                        Plaintiffs,

                                                    **MEMORANDUM OF**
                                                    **DECISION & ORDER**
            -against-                               14-cv-599 (ADS)(GRB)


PEOPLE'S UNITED BANK, PEOPLE'S
UNITED INSURANCE AGENCY, INC.,
DAN CASEY, LOUISE SANDBERG, and
JOHN BARNES,
                        Defendants.
---------------------------------------------------------X
<u>**APPEARANCES:**</u>

**Leeds Brown Law P.C.**
*Attorneys for the Plaintiffs*
One Old Country Road, Suite 347
Carle Place, NY 11514
            By: Rick Ostrove, Esq.
                    Andrew George Costello, Esq., Of Counsel

**Jackson Lewis, P.C.**
*Attorneys for the Defendants*
58 South Service Road, Suite 250
Melville, NY 11747
            By: Daniel Sergio Gomez-Sanchez, Esq.
                    Mark S. Mancher, Esq., Of Counsel

**SPATT, District Judge**.

        This case arises from allegations by the Plaintiff Joanne Bentivegna (the "Plaintiff" or

"Bentivegna") that her former employer, the Defendant People's United Insurance Agency, Inc.

("PUIA"), and the Defendants People's United Bank, Dan Casey, Louise Sandberg, and John

Barnes (collectively, the "Defendants"), discriminated against her on the basis of her gender and

retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e

*et seq.* ("Title VII"); the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*

("NYSHRL"); and the Equal Pay Act, 29 U.S.C. § 206(d) (the "Equal Pay Act").  In addition,

1

she asserts a breach of contract claim; an unjust enrichment claim; and a claim under New York

Labor Law § 190 *et seq.* related to the Defendants' alleged failure to pay her $90,000 in sales

commissions.

Presently before the Court is a motion by the Plaintiff pursuant to Federal Rule of Civil

Procedure ("Fed. R. Civ. P." or "Rule") 12(b)(1) to dismiss counterclaims filed by the

Defendants against the Plaintiff for breach of contract; conversion; unfair competition;

misappropriation of confidential and proprietary information; tortious interference with business

relations; and diversion of corporate opportunity and breach of a duty of loyalty.

For the reasons set forth below, the Plaintiff's motion is granted and the counterclaims

are dismissed for lack of subject matter jurisdiction.

## I. BACKGROUND

### A. The Amended Complaint

The Plaintiff is a resident of Shoreham, New York.  (Am. Compl. at ¶ 1.)  From 1987 to

2004, she was employed by Seigerman-Mulvey Company, Inc. ("Seigerman-Mulvey") first as a

customer service representative, then as a commissioned insurance salesperson, and finally as a

partner.  (Id. at ¶¶ 11–12.)

In 2004, the Bank of Smithtown acquired Seigerman-Mulvin, at which point, the Plaintiff

began working as an operations manager for the Bank of Smithtown Insurance Agents & Brokers

("BOSIAB").  (Id. at ¶ 14.)  In 2007, the Plaintiff became the president of BOSIAB.  (Id. at ¶

15.)

The Defendant People's United Bank is a federally chartered stock savings bank with

headquarters in Bridgeport, Connecticut.  (Id. at ¶ 7.)

2

The Defendant PUIA is a wholly owned subsidiary of People's United Bank.  (Id. at ¶ 8.)
It is a Connecticut corporation that operates an insurance agency and has an office in Hauppauge,
New York.  (Id.)

On November 30, 2010, People's United Bank acquired BOSIAB, and BOSIAB merged
with PUIA.  (Id. at ¶¶ 20–21.)

In December 2010, as part of the transition, the Plaintiff lost her title as President and her
fixed salary.  (Id. at ¶ 31.)  Instead, she assumed a role at PUIA as a commissioned sales
producer and agreed to an arrangement whereby she would receive a commission of 25% on all
new policies and policy renewals that she helped to procure.  (Id. at ¶¶ 32–33.)

According to the amended complaint, in January 2011, the Plaintiff learned that PUIA
was paying male sales producers with the same book of business that she had at a commission
rate of 32%, seven percent higher than the 25% commission rate that PUIA agreed to pay her.
(Id. at ¶ 37.)

In March 2011, the Plaintiff began complaining to the Defendant Dan Casey ("Casey"),
the then-chief executive officer of PUIA, about this apparent pay disparity.  (Id. at ¶ 38.)  On
June 27, 2011, after the Plaintiff raised the issue several more times with Casey, he agreed to pay
her at a rate commensurate with her male colleagues beginning on August 1, 2011, but he
refused to make the pay increase retroactive.  (Id. at ¶ 50.)

According to the amended complaint, Casey made a number of inappropriate comments
and suggestions to the Plaintiff and other female employees during sales meetings and company
events, including the following: (i) in a July 2011 meeting, he used the word "do" in a way that
suggested an illusion to sex, see id. at ¶ 51; (ii) in the summer of 2011, he threw ping pong balls
down the shirt of a female co-worker during a company picnic, see id. at ¶ 53; (iii) during a

3

February 2012 lunch meeting, he told a hostess at a lunch meeting that he would "take two of those," in reference to her breasts, *see id.* at ¶ 56; (iv) during a June 2012 meeting, he told sales producers to bring clients to bars to close deals but advised, "you can't do that with women," *see id.* at ¶ 63; and (v) in a July 2012 meeting, he stated in front of thirty employees, "We are happy that [the Plaintiff] is successful, despite that she's a woman," *id.* at ¶ 66.

In addition, in June 2012, the Plaintiff was at the Hartford office of PUIA and took down a poster in the coffee room that depicted a woman in a low-cut tank top.  (Id. at ¶ 60.)  Based "[u]pon information and belief," the Plaintiff alleges that after she took the poster down, unidentified employees replaced the poster with another poster of a woman "clad in thigh-high fishnet stockings holding a pair of handcuffs."  (Id. at ¶ 61.)

The Plaintiff also alleges that she was offered less administrative support than other male sales managers.  (Id. at ¶¶ 42–44.)  Further, on one occasion, Casey sent a list of sales leads to male employees before sending it to female employees, and as a result, male employees obtained more promising sales leads than their female counterparts.  (Id. at ¶¶ 42–44, 72.)

On December 7, 2012, the Plaintiff filed a charge of discrimination with the New York State Division of Human Rights ("NYSDHR") and the U.S. Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment and gender discrimination.  (Id. at ¶ 79.)

Subsequently, the Defendants removed the Plaintiff from her position as a team leader for a sales team in the Hartford office and assigned her to a smaller team in the Bridgeport office (Id. at ¶ 81.)  On June 6, 2013, the NYSDHR found probable cause to support the allegations in the Plaintiff's complaint.  (Id. at ¶ 94.)

On July 31, 2013, after the parties had engaged in settlement negotiations, Brian Loveless ("Loveless"), the chief financial officer of PUIA, and Deborah Gross ("Gross"), a human

resources manager, held a meeting with the Plaintiff and informed her that they were placing her on administrative leave immediately because she accessed company information on her private email address.  (Id. at ¶ 101.)  As a result, the Plaintiff could no longer sell insurance or generate new commissions.  (Id.)

On August 19, 2013, Gross informed the Plaintiff that PUIA was terminating her employment.  (Id. at ¶¶ 103–04.)

According to the amended complaint, during the course of her employment, the Defendants represented to the Plaintiff that even after she was terminated, she would continue to receive commissions on accounts that she originated if those accounts were renewed.  (Id. at ¶ 120–21.)  However, the Defendants have thus far refused to pay her $90,000 in commissions that she claims that she is entitled to.  (Id. at ¶ 125.)

**B. The State Court Action**

On September 4, 2013, prior to the Plaintiff commencing this action, the Defendant PUIA filed a summons and complaint (the "State Court Complaint") in New York State Supreme Court, Suffolk County, seeking injunctive relief and monetary damages against the Plaintiff, John K. Mulvey ("Mulvey"), and WLF Consulting, Inc. ("WLF") (the "State Court Action"). (See State Court Compl., Costello Aff., Ex. 1.)  The State Court Complaint paints a picture of the events leading up to the Plaintiff's termination that is starkly different from the allegations discussed above.

In particular, according to the State Court Complaint, prior to April 2004, Mulvey and the Plaintiff were both principals at Seigerman-Mulvey.  (Id. at ¶ 13.)  In 2004, they entered into an agreement to sell their shares in Seigerman-Mulvey to the Bank of Smithtown in exchange for

cash pay-outs.  (Id. at ¶ 14.)  They also entered into separate employment agreements with Bank of Smithtown.  (Id. at ¶ 15.)

Under the terms of the purchase agreement and their employment agreements, Mulvey and the Plaintiff allegedly agreed that during the period of their employment with the Bank of Smithtown, they would not "engage as an agent, broker, independent contractor, employee or consultant in a company that is not affiliated with [Bank of Smithtown]."  (Id. at ¶ 16.)  They also agreed that for a period of three years from the dates of their terminations, they would not "engage as an agent, broker, independent contractor, employee or consultant in a company . . . which is in the business of selling insurance products and services and/or offering mutual fund investment services in . . . Suffolk, Nassau, Queens, Kings, New York, or Staten Island [Counties]."  (Id. at ¶ 17.)

On January 1, 2011, People's United Bank acquired the Bank of Smithtown and in doing so, also allegedly acquired all the rights under any contracts or agreements with the Bank of Smithtown or its predecessor entities, including the restrictive covenants described above.  (Id. at ¶ 9.)

Following the acquisition, Mulvey and the Plaintiff became employees of the Defendant PUIA.  (See id. at ¶ 27.)  As employees of PUIA, they became subject to a code of conduct under which they agreed to, among other things, not disclose the confidential and proprietary information of PUIA. (Id. at ¶ 23.)

Allegedly, on December 18, 2012, while still employed at PUIA, the Plaintiff formed WLF without authorization from PUIA.  (Id. at ¶ 48.)  According to the State Court Complaint, the Plaintiff and Mulvey then began to solicit clients, including existing and potential clients of PUIA, and to provide consulting services on WLF's behalf for those clients.  (Id. at ¶¶ 46, 52–

6

60.)  It is also alleged that the Plaintiff also forwarded information regarding the insurance policies of clients of PUIA to competitors of PUIA.  (Id. at ¶¶ 66–78.)

Subsequently, after discovering that the Plaintiff and Mulvey had undertaken these actions, PUIA terminated Mulvey and the Plaintiff for allegedly violating their restrictive covenants and the employee code of conduct.  (Id. at ¶ 93.)

After his termination, Mulvey allegedly removed his computer from his office at PUIA, which contained the company's confidential and proprietary information, and has not returned it. (Id. at ¶¶ 94–99.)

Based on these allegations, PUIA asserted state law claims against the Plaintiff, Mulvey, and WLF for (i) breach of contract; (ii) conversion; (iii) unfair competition; (iv) misappropriation of confidential and proprietary information; (v) tortious interference with business relations; and (vi) diversion of corporate opportunity and breach of a duty of loyalty. (See id. at ¶¶ 118–153.)  It also asserted a separate claim solely against Mulvey and WLF for tortious interference with contract.  (See id. at ¶¶ 154–63.)

In conjunction with filing the complaint, PUIA moved by order to show cause for a temporary restraining order ("TRO") and a preliminary injunction restraining the Plaintiff and Mulvey from breaching the restrictive covenants in their employment and purchase agreements by, among other things, soliciting business from PUIA's existing clients and engaging in the insurance business within the New York City area.  (See Costello Aff., Ex. 2.)

Subsequently, Justice Thomas F. Whelan of the New York State Supreme Court, Suffolk County, entered a TRO and set a briefing schedule on the motion for a preliminary injunction. (See id.)  No hearing was held.  (See Cosello Aff., Ex. 3.)

7

On September 20, 2013, Justice Whelan rendered a decision conditionally granting

PUIA's motion for a preliminary injunction and enjoining the Plaintiff and Mulvey, as follows:

> (i) from soliciting any clients of [PUIA] that were clients on August 19, 2013 in any of the six downstate counties of Suffolk, Nassau, Queens, Kings, New York, and Richmond; and (ii) from engaging in those six same downstate counties as agent, broker, independent contractor, employee or consultant or from serving as director, officer, member or partner to a company that sells insurance products of the type sold by PUIA or that renders consulting services of the types engaged in by [PUIA], namely claims management consulting, workers compensation experience modification analysis consulting; insurance premium audit consulting; and safety loss control consulting in connection with the reduction of workplace injuries.

(Id. at p. 8.)

In addition, Justice Whelan required PUIA to post an undertaking pursuant to New York

Civil Practice Law and Rule ("CPLR") § 6312 in the amount of $400,000.  (Id.)

According to a declaration filed by Andrew Costello, Esq. ("Costello"), an attorney for

the Plaintiff, on May 13, 2014, the Plaintiff served interrogatories and a request for the

production of documents on PUIA, both of which had an original return date of June 12, 2014.

(See Costello Aff. at ¶ 11.)  However, Costello states that despite being granted multiple

extensions of discovery deadlines by Justice Whelan, PUIA has thus far failed to produce any

documents or interrogatory responses.  (Id. at ¶ 14–15.)

For its part, in a declaration filed by Mark Mancher, Esq., an attorney for PUIA, he states

that "[w]hile discovery disputes exist in the State case, it is PUIA's position that it has fully

complied with [the] Plaintiff's discovery requests."  (Mancher Decl. at ¶ 33.)  PUIA also

represents that, "None of the parties have been deposed in either action and neither action is

substantially further in terms of completed discovery."  (Id. at ¶ 32.)

On December 7, 2015, the Plaintiff filed a motion pursuant to CPLR § 3126 to strike the PUIA's complaint or in the alternative, to preclude PUIA from offering evidence as to the items to which the Plaintiff allegedly sought in discovery.  (See Costello Dec., Ex. 4.)

The parties do not state whether Justice Whelan has ruled on the Plaintiff's motion.

**C. As to the Instant Action**

On January 28, 2014, the Plaintiff commenced this action in federal court against the Defendants People's United, PUIA, Case, and Sandberg, alleging claims against the Defendants under Title VII, the NYSHRL, and the Equal Pay Act.  As described earlier, the Plaintiff principally alleges that the Defendants discriminated against her on the basis of her gender, retaliated against her for filing a complaint with the EEOC and the NYSDHR for sexual harassment and discrimination, and failed to pay her $90,000 in commissions that she was allegedly entitled to.

On April 10, 2014, the Defendants filed an answer to the complaint generally denying the substance of the Plaintiff's allegations.

In response to a request by the parties, United State Magistrate Judge Gary R. Brown stayed discovery so that the parties could participate in mediation.

On June 26, 2015, the parties filed a letter with the Court indicating that they had failed to reach a settlement in mediation.

On July 6, 2015, the parties appeared before Judge Brown for a conference during which Judge Brown approved an amended discovery schedule.

On October 1, 2015, the Plaintiff filed a motion for leave to amend the complaint to add John Barnes ("Barnes"), the President and Chief Executive Officer of People's United Bank, as a named Defendant.

9

On October 16, 2015, the Defendants filed a letter motion for leave to amend their answer to assert counterclaims against the Plaintiff.

On October 20, 2015, the Court issued an order granting the Plaintiff's motion to amend the complaint as unopposed and directed the Plaintiff to file her amended complaint within twenty days.  The Court further denied the Defendants' letter motion to amend the answer as moot because it noted that the Defendants would have an opportunity to file an amended answer in response to the amended complaint.

On November 3, 2015, the Plaintiff filed an amended complaint.

On December 1, 2015, the Defendants filed an amended answer and counterclaims. The Defendants' counterclaims against the Plaintiff are almost identical to the claims that PUIA asserted against the Plaintiff in the State Court Complaint.  Specifically, they assert the same six common law claims against the Plaintiff for (i) breach of contract; (ii) conversion; (iii) unfair competition; (iv) misappropriation of confidential and proprietary information; (v) tortious interference with business relations; and (vi) diversion of corporate opportunity and breach of a duty of loyalty.  (See Am. Answer at ¶¶ 100–127.)  These claims are also based on the same allegations contained in the State Court Complaint — namely, that the Plaintiff misappropriated PUIA's confidential information; setup a competing entity known as WLF; and violated the restrictive covenants in their stock purchase and employment agreements.  (See id. at ¶¶ 2–3.)

In their answer, the Defendants state that they chose to assert the same claims against Plaintiff as PUIA asserted against her in the State Court Action "in the interest of efficiency." (Id. at ¶ 7.)

Presently before the Court is a motion by the Plaintiff pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss the counterclaims for lack of subject matter jurisdiction.  Specifically, the Plaintiff

10

contends that (i) the Defendants are seeking an end-round 28 U.S.C. § 1441, the removal statute; (ii) the Court should decline to exercise supplemental jurisdiction over the State law counterclaims pursuant to 28 U.S.C. § 1367(c); and (iii) even if the Court finds that supplemental jurisdiction is proper, it should abstain from exercising jurisdiction under the principles outlined in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976).  (See the Pl.'s Mem. of Law at 2–10.)

In opposition, the Defendants contend that (i) resort to the removal statute is not necessary because they are not seeking to remove the entire State Court Action, only the claims against the Plaintiff; (ii) the Court should exercise supplement jurisdiction over the Plaintiff's claim; and (iii) the Colorado River abstention doctrine is inapplicable in this case.  (See the Defs.' Mem. of Law at 6–17.)

As set forth below, the Court finds compelling reasons to decline supplemental jurisdiction over the Defendants' counterclaims in light of the State Court Action.  Therefore, it need not address the Plaintiff's remaining arguments.

## II. DISCUSSION

### A. The Legal Standard

"Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper 'when the district court lacks the statutory or constitutional power to adjudicate it.'"  Ford v. D.C. 37 Union Local 1549, 579 F.3d 187, 188 (2d Cir. 2009) (Per Curiam) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)).  In ruling on a Rule 12(b)(1) motion, the Court must accept all factual allegations in the pleading as true and draw all reasonable inferences in favor of the pleader.  See Absolute Activist Value Master Fund Ltd. v. Ficeto, 677 F.3d 60, 65 (2d Cir. 2012) ("We review de novo a district court's dismissal pursuant to Fed. R. Civ. P.

12(b)(1) or Fed. R. Civ. P. 12(b)(6), 'accepting all factual allegations in the complaint as true.'")

(quoting Ford, 579 F.3d at 188)); Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635,

638 (2d Cir. 2005) ("'[I]t is well established that, in passing on a motion to dismiss, whether on

the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action,

the allegations of the complaint should be construed favorably to the pleader.'") (parenthetically

quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L.Ed.2d 90 (1974), abrogated

on other grounds by, Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396

(1982)).

     However, the district court "may refer to evidence outside the pleadings," and the party

"asserting subject matter jurisdiction has the burden of proving by a preponderance of the

evidence that it exists." Makarova, 201 F.3d at 113 (citations omitted).

     Applying these standards, the Defendants are for purposes of this motion, the pleader of

their counterclaims. Therefore, the Defendants have the burden of establishing subject matter

jurisdiction over their counterclaims, and the Court construes the allegations supporting their

counterclaims as true. However, in resolving question of subject matter jurisdiction, the Court

will also consider the evidence and declarations filed by the parties that are extrinsic to the

pleadings.

## B. As to Supplemental Jurisdiction

     The Defendants do not offer an independent basis of federal subject matter jurisdiction.

Rather, they assert this Court should exercise supplemental jurisdiction over their state law

counterclaims under 28 U.S.C.A. § 1367 ("Section 1367"), which states, in relevant part:

> in any civil action of which the district courts have original jurisdiction, the
> district courts shall have supplemental jurisdiction over all other claims that are so
> related to claims in the action within such original jurisdiction that they form part

of the same case or controversy under Article III of the United States
Constitution.

28 U.S.C. § 1367(a).

There is no dispute that this Court has original jurisdiction over this action under 28

U.S.C. § 1331 because the Plaintiff asserts claims against the Defendants for gender

discrimination under two federal statutes, Title VII and the Equal Pay Act.  See

28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising

under the Constitution, laws, or treaties of the United States.").

The Defendants assert that their state law counterclaims against the Plaintiff for

misappropriating confidential information; setting up a competing entity; and violating restrictive

covenants in the Plaintiff's employment and purchase agreements "form part of the same case or

controversy" as the Plaintiff's federal law claims against them for employment discrimination

and retaliation.   That is because the Defendants intend to defend against the Plaintiff's

discrimination claims by "offering evidence that those [discrimination claims] merely were

brought as a strategy to allow her to walk away from her restrictive covenant agreements and

misappropriate PUIA's customers" and that they terminated her employment, not due to

discrimination or retaliation, but rather, for "her acts of disloyalty."  (See the Defs.' Opp'n Mem.

of Law at 7.)  According to the Defendants, this same evidence also forms the basis of state law

counterclaims against the Plaintiff because their state law claims are predicated on allegations

that the Plaintiff breached her duty of loyalty and her obligations under a stock purchase

agreement and her employment agreement by "engaging in a scheme to divert business from

PUIA and provide highly confidential information to a competitor."  (Id.)

On their part, the Plaintiff does not dispute that the Defendants' counterclaims "form part of the same case or controversy" as her federal discrimination claims.  Rather, she relies on Section 1367(c), which provides:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

The Plaintiff asserts this case involves "exceptional circumstances," and there are "compelling reasons" to decline supplemental jurisdiction because of the existence of the parallel State Court Action in which PUIA asserts identical claims against the Plaintiff.  (See the Pl.'s Mem. of Law at 2–8.)

In response, the Defendants assert that "exceptional circumstances" do not justify declining to exercise supplemental jurisdiction over their counterclaims because if the Court allows the Defendants to proceed with their counterclaims against the Plaintiff in this Court, PUIA intends to dismiss its claims against the Plaintiff in the State Court Action.  (See the Defs.' Opp'n Mem. of Law at 8–9.)  Thus, they assert that there would be no "duplication."  In fact, the Defendants contend that exercising supplemental jurisdiction would further judicial economy because it would consolidate the Defendants' claims against the Plaintiff in one proceeding.  (See id.)  They also assert that "a declination by the Court of supplemental jurisdiction over [the] Defendants' counterclaims could unfairly prejudice [the] Defendants by potentially limiting the

14

relevant evidence [the] Defendants could introduce in support of their legitimate business reason for terminating Plaintiff's employment."  (Id. at 10.)

In reply, the Plaintiff contends that even if the Defendants were to dismiss their claims against the Plaintiff in the State Court Action, there still exists "compelling reasons" to decline exercising jurisdiction because (i) Justice Whelan has already issued a number of factual and legal determinations in the State Action and permitting the Defendants to start those claims anew in this Action may result in inconsistent judicial outcomes; (ii) consolidating the Defendants' claims against the Plaintiff in this action would be unfair to the Plaintiff because it would remove certain remedies exclusively available to the Plaintiff in the State Court Action; and (iii) consolidation of the Defendants' claims against the Plaintiff would permit the Defendants to circumvent the Plaintiff's motion for discovery sanctions currently pending in the State Court Action.  (See the Pl.'s Reply Mem. of Law at 2–7.)  The Court agrees.

The Second Circuit has stated that where "at least one of the subsection 1367(c) factors is applicable, a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values . . . [of] economy, convenience, fairness, and comity."  Jones v. Ford Motor Credit Co., 358 F.3d 205, 214 (2d Cir. 2004); accord Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 446 (2d Cir. 1998) ("Once a court identifies one of the factual predicates which corresponds to one of the subsection 1367(c) categories, the exercise of discretion 'is informed by whether remanding the pendent state claims comports with the underlying objective of 'most sensibly accommodat[ing]' the values of 'economy, convenience, fairness, and comity.'") (quoting Executive Software N. Am., Inc. v. United States Dist. Court, 24 F.3d 1545, 1557 (9th Cir. 1994)).

15

Applying this principle, the Court must determine (1) whether there are "exceptional circumstances" and "compelling reasons" within the meaning of Section 1367(c)(4) to decline jurisdiction over the Defendants' counterclaims; and (2) whether declining jurisdiction will accommodate the values of "economy, convenience, fairness, and comity."

The Second Circuit has indicated that Section 1367(c)(4) should be applied narrowly because in using the term, "exceptional circumstances," "Congress has sounded a note of caution that the bases for declining jurisdiction should be extended beyond the circumstances identified in subsections (c)(1)-(3) only if the circumstances are quite unusual." Itar-Tass Russian News Agency, 140 F.3d at 448 (quoting Executive Software, 24 F.3d at 1558). As such, "federal courts must ensure that the reasons identified as compelling are not deployed in circumstances that threaten this principle." Id. (internal quotation marks and citations omitted).

"[C]ourts have found that 'exceptional circumstances' exist for declining jurisdiction under § 1367(c)(4) where the claims in federal court are duplicative of claims already asserted in parallel state court proceedings.'" Metro Found. Contractors, Inc. v. Arch Ins. Co., 498 F. App'x 98, 103 (2d Cir. 2012) (Summary Order); see also Kleiman v. O'Neill, No. 03-CV-3829 (ERK), 2008 WL 5582453, at *3 (E.D.N.Y. Dec. 30, 2008) ("The existence of a parallel proceeding addressing the same allegations may give rise to an exceptional circumstance supporting the Court's refusal to exercise supplemental jurisdiction under subsection (c)(4).").

However, "[a]s a general matter, '[t]here is no bar against parallel in personam actions proceeding in two or more courts. 'Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court. Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by application of the principles of res adjudicata.'" SST Glob. Tech., LLC v. Chapman, 270 F.

16

Supp. 2d 444, 461 (S.D.N.Y. 2003) (quoting Woodford v. Community Action Agency of Greene County, Inc., 239 F.3d 517, 525 (2d Cir. 2001)).  Therefore, "in instances where courts have dismissed claims under § 1367(c)(4) on grounds of duplication and judicial economy, the duplication between the federal and state proceedings has been much more marked or the fact of duplication has been accompanied by the presence of other factors rendering the circumstances 'exceptional.'" Id.

For example, in Hays Cty. Guardian v. Supple, 969 F.2d 111, 124 (5th Cir. 1992), the district court remanded the state law claims asserted by the plaintiffs, a group of students and a newspaper, against state officials in their official and individual capacities on Eleventh Amendment-sovereign immunity grounds.  On appeal, the Fifth Court found no error in the district court's decision to remand the state law claims against the defendants in their official capacities on sovereign immunity grounds.  Id. at 125.  However, the Fifth Circuit found that the Eleventh Amendment "does not bar state-law actions against state official in their individual capacity."  Id.  Nevertheless, the Circuit Court affirmed the remand of the state law claims against the defendants in their individual capacities under Section 1367(c)(4), reasoning that "exceptional" and "compelling reasons" for remand existed because "[a]djudicating state-law claims in federal court while identical claims are pending in state court would be a pointless waste of judicial resources."  Id.

Similarly, in Philip Morris Inc. v. Heinrich, No. 95 CIV. 0328 (LMM), 1998 WL 122714, at *1 (S.D.N.Y. Mar. 19, 1998), a defendant in a federal action moved under Rule 14(a) for leave to file a third party complaint against a non-party for indemnification, breach of contract, breach of the obligation of good faith and fair dealing, interference with prospective economic advantage, wrongful termination under New Jersey state law, fraud, and violations of New

Jersey's state RICO statute.  The court granted the defendant's motion with regard to the indemnification claims but not with regard to the breach of contract and fraud claims because the court found "compelling reasons" existed for declining to exercise supplemental jurisdiction over those claims.  Id.  Specifically, the court noted there "is currently another action in existence in a New Jersey state court, addressing the same claims as those alleged in [the defendant's] proposed third-party complaint."  Id.  As discovery was set to close in the New Jersey action in less than three months, the court reasoned that the defendant would be "able to obtain the relief he seeks in his third-party complaint in another forum and his claims are likely to be more quickly resolved in the New Jersey forum than if added to the claims litigated in this forum."  Id. at *2.

In Philip Morris Inc., the court also found that the addition of the non-indemnification claims would prejudice the Plaintiff because "it would likely result in additional motion practice, additional discovery, and the injection of unrelated employment contract issues into this already complex action."  Id.  Finally, the court noted that allowing the defendant to bring all of his claims against the non-party in one action would not eliminate the duplication of evidence or avoid inconsistent results because other than the indemnification claim, the proposed third party claims were "separate from and independent of the issues to be litigated in the main action, creating almost no overlap of legal or factual matters to be determined in the resolution of the separate complaints.." Id.

By contrast, the Defendants cite to Metro Found. Contractors, Inc. v. Arch Ins. Co., No. 09 CV 6796 JGK, 2011 WL 2150466, at *1 (S.D.N.Y. May 31, 2011), aff'd in part, vacated in part, remanded, 551 F. App'x 607 (2d Cir. 2014).  There, a subcontractor filed a claim against the general contractor in New York State Supreme Court to recover money they were allegedly

owed for work they performed under a subcontract agreement.  Id. at *2.  Subsequently, the subcontractor initiated an action in federal court against the general contractor's surety who issued a payment bond to the general contractor to cover costs of labor and materials for the project.  Id. at *1–2.  In the federal action, the surety filed an answer and a third-party complaint against the general contractor and other defendants seeking indemnification.  Id. at *2.  The general contractor then filed a third-party answer and counterclaims against the subcontractor for breach of contract and indemnification alleging that the subcontractor failed to perform its duties under the subcontract in a timely and workmen like manner.  Id.

In Metro Found. Contractors, Inc., the subcontractor moved in the federal action to dismiss the general contractor's state law counterclaims for lack of subject matter jurisdiction because it argued that, among other things, there were "exceptional circumstances" that justified the court declining supplemental jurisdiction over the general contractor's counterclaims because the general contractor's "state law [counterclaims] are virtually identical to claims that [the general contractor] had previously asserted in response to [the subcontractor's state court action]."  Id.

The district court rejected that argument for two reasons.  First, it found that it was not clear that judicial resources would be preserved by declining to exercise supplemental jurisdiction given that, according to the court, the same factual issues would have to be considered in addressing the subcontractor's claims against the surety and the surety's claims against the general contractor even if the court decided not to exercise supplemental jurisdiction. Id.  Second, the court found it would not be an appropriate case to find "exceptional circumstances" because it was the subcontractor who multiplied the proceedings by deciding to bring one action against the surety in federal court and a separate action against the general

contractor in state court.  Id. at *6.  Thus, it would be unfair to decline supplemental jurisdiction over the general contractor's claims based on the the multiplication of proceedings because it was the subcontractor who caused the multiplication of proceedings in the first instance.  Id.

In the present case, the Defendants acknowledge that their counterclaims against the Plaintiff are identical to the claims that PUIA asserts against the Plaintiff in the State Court Action.  (See the Defs.' Opp'n Mem. of Law at 6.)  As noted above, courts have often declined to exercise supplemental jurisdiction under such circumstances because it is a waste of judicial resources to allow a party to proceed with identical claims in both state and federal court.

However, the Defendants contend there would be no waste of judicial resources in this case because if this Court decides to exercise supplemental jurisdiction over their counterclaims against the Plaintiff, PUIA will voluntarily dismiss its claims against the Plaintiff in the State Court Action.  (See id. at 8–9.)  The Court finds this argument problematic for several reasons.

First, the State Court Action has been pending for almost three years.  Justice Whelan issued a lengthy opinion granting a preliminary injunction on some but not all of PUIA's claims. Thus, even if PUIA dismisses its claims against the Plaintiff in the State Action, there would likely be further motion practice in this Court regarding the preclusive effect, if any, of Justice Whelan's factual and legal findings, particularly given that the Defendants are moving for similar injunctive relief in this action and may also seek a preliminary injunction.

Furthermore, the parties in the State Court Action appear to have been litigating discovery disputes since 2014.  The Plaintiff contends that PUIA has been entirely delinquent in their discovery obligations.  (See Costello Aff. at ¶¶ 11–15.)  The Defendants assert that PUIA has complied with its discovery obligations.  (See Mancher Decl. at ¶ 33.)  Were the Court to exercise supplemental jurisdiction over the Defendants' counterclaims in this Court, the Court

would set an entirely new discovery schedule on the Defendants' counterclaims, and the parties would likely have to re-litigate many of the same issues that they have already raised before Justice Whelan.

On the other hand, although the Defendants state that PUIA intends to voluntarily dismiss its claims against the Plaintiff in the State Court Action, PUIA's claims against Mulvey and WLF would remain pending. Aside from one separate claim involving Mulvey's alleged misappropriation of PUIA's computer, PUIA's claims against Mulvey and WLF are almost identical to its claims against the Plaintiff. Thus, even if PUIA dismissed its claims against the Plaintiff in the State Court Action and instead pursues those claims as counterclaims in this Action, there would still be a large degree of factual overlap between the two proceedings and duplicative discovery.

Therefore, the Court finds that the existence of the State Court Action does present "exceptional circumstances" warranting the denial of supplemental jurisdiction because exercising supplemental jurisdiction over the Defendants' counterclaims would likely result in further litigation and not save judicial resources regardless of whether Justice Whelan grants PUIA's motion to voluntary dismiss its claims against the Plaintiff. See Philip Morris Inc., 1998 WL 122714 at *2 (rejecting a defendant's argument that permitting him to bring all of his claims in the federal proceeding, as opposed to a parallel state proceeding, would promote judicial economy because "it would not eliminate duplication of evidence or avoid inconsistent results from identical or similar evidence").

Declining jurisdiction is also consistent with the other relevant factors of convenience, fairness, and comity. As to convenience, construing the allegations in the State Court Claim as true, the Plaintiff was a co-conspirator of Mulvey and led the efforts to form WLF and allegedly

poach PUIA's clients.  Thus, the Plaintiff will likely have to participate as a key witness in the State Court Action even if PUIA voluntarily dismisses its claims against her.

Similarly, as noted, PUIA intends to continue the State Court Action against Mulvey and WLF even if it decides to voluntarily dismiss its claims against the Plaintiff.  Thus, regardless of whether their claims against the Plaintiff are consolidated into this action, the Defendants will also have to litigate their claims arising from the Plaintiff and Mulvey's alleged scheme to form a separate and competing enterprise in both the State Court Action and this action.

Therefore, the Court finds that declining jurisdiction over the Defendants' counterclaims, and thereby forcing the Defendants to continue litigating their claims against the Plaintiff in the State Court Action, would not materially inconvenience either the Plaintiff or the Defendants.

With regard to fairness, as the Plaintiff correctly points out, in issuing a preliminary injunction against the Plaintiff, Justice Whelan required PUIA to submit an undertaking pursuant to CPLR 6312(b) in the amount of $400,000.  CPLR 6312(b) mandates that a plaintiff furnish a bond for a fixed amount of money to reimburse the defendant for any damages caused by the preliminary injunction if it is "finally determined" that the injunction was erroneously granted. See J.A. Preston Corp. v. Fabrication Enterprises, Inc., 68 N.Y.2d 397, 405, 502 N.E.2d 197, 200 (N.Y. 1986) (stating that the purpose of an undertaking is "'to reimburse the defendant for damages sustained if it is later finally determined that the preliminary injunction was erroneously granted.'") (quoting Margolies v. Encounter, Inc., 42 N.Y.2d 475, 477, 368 N.E.2d 1243, 1244 (N.Y. 1977)).

The injunction against the Plaintiff has been in place in State Court for nearly three years. If the Defendants are permitted to discontinue their claims against the Plaintiff in the State Court Action and renew those claims as counterclaims against the Plaintiff in this action, the Plaintiff

may lose the ability to initiate a claim against the $400,000 undertaking to reimburse her for damages if Justice Whelan makes a "final determination" that the injunction was not properly issued in the first place.  Taking away a remedy and a potential source of damages from the Plaintiff is, of course, unfair and prejudicial to the Plaintiff.

Furthermore, on December 7, 2015, more than six months ago, in light of PUIA's apparent unwillingness to comply with the Plaintiff's discovery requests, the Plaintiff filed a motion in the State Court Action to dismiss PUIA's complaint or in the alternative, to preclude PUIA from offering evidence as to the items to which the Plaintiff allegedly sought in discovery. That motion appears to still be pending and permitting the Defendants to remove their claims from the State Court Action and re-assert them here would, as the Plaintiff correctly points out, potentially permit PUIA to evade responsibility for its alleged discovery violations.  While the Defendants appear to dispute the substance of the Plaintiff's motion in the State Court Action, the Court finds that it would be unfair and prejudicial to the Plaintiff to permit the Defendants to start with a clean slate in this Court before Justice Whelan has an opportunity to rule on the Plaintiff's motion.

On the other side of the fareness balance, the Court finds no merit in the Defendants' contention that declining jurisdiction over their counterclaims against the Plaintiff would "potentially limit[] the relevant evidence Defendants could introduce in support of their legitimate business reason for terminating the Plaintiff's employment and in support of their contention that [the] Plaintiff's discrimination claims are a mere pretextual attempt to evade her obligations to PUIA."  (The Defs.' Opp'n Mem. of Law at 10.)

In analyzing claims of gender discrimination, such as those asserted by the Plaintiff, under Title VII and the NYSHRL, the court applies the familiar burden-shift framework set forth

23

in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Under that framework, "'[o]rdinarily, a plaintiff must first establish a prima facie case of

discrimination by showing that (1) he is a member of a protected class; (2) he is competent to

perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment

decision or action; and (4) the decision or action occurred under circumstances giving rise to an

inference of discrimination based on his membership in the protected class.'" Dawson v.

Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005) (quoting Mario v. P & C Food Markets,

Inc., 313 F.3d 758, 767 (2d Cir .2002)).  "Second, assuming the plaintiff demonstrates a prima

facie case, the burden of production shifts to the employer to articulate a legitimate, clear,

specific and non-discriminatory reason for [the adverse employment action]." Holt v. KMI-

Cont'l, Inc., 95 F.3d 123, 129 (2d Cir. 1996).  Third, "once the employer has proffered its

nondiscriminatory reason, the employer will be entitled to summary judgment (or to the

overturning of a plaintiff's verdict) unless the plaintiff can point to evidence that reasonably

supports a finding of prohibited discrimination." James v. New York Racing Ass'n, 233 F.3d

149, 154 (2d Cir. 2000).

Evidence regarding the Plaintiff's purported acts of disloyalty and breaches of company

protocol are highly relevant to the Defendants' defense of the Plaintiff's gender discrimination

claims because that evidence tends to suggest that the Defendants had a legitimate non-

discriminatory reason for discharging the Plaintiff.   Thus, regardless of whether the Court

exercises supplemental jurisdiction over the Defendants' counterclaims against the Plaintiff

regarding her supposed breaches of loyalty, the Defendants will be able to obtain discovery on

these issues and if necessary, introduce evidence regarding the Plaintiff's alleged disloyal acts at

the trial.  Accordingly, the Court does not find any prejudice to the Defendants in declining to exercise supplemental jurisdiction over their counterclaims.

Finally, considerations of comity also weigh in favor of declining jurisdiction over the Defendants' counterclaims.  Comity refers to "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways."  Levin v. Commerce Energy, Inc., 560 U.S. 413, 421, 130 S. Ct. 2323, 2330, 176 L. Ed. 2d 1131 (2010) (quoting Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100, 112, 102 S. Ct. 177, 184, 70 L. Ed. 2d 271 (1981)).

As noted, Justice Whelan has presided over the same claims the Defendants seek to assert against the Plaintiff as counterclaims in this action.  To permit PUIA to dismiss its claims against the Plaintiff in the State Court Action after Justice Whelan issued a preliminary injunction, discovery has been ongoing for more than two years, and the Plaintiff filed a potentially dispositive motion to dismiss the State Court Complaint that has been pending for more than six months, and then permit PUIA to reassert those same claims in this Court and to start discovery anew would undermine Justice Whelan's authority over the State Court Action and may result in rulings in this case that are inconsistent with his prior rulings.  That result would clearly impinge upon the principles of comity.  See Chenensky v. New York Life Ins. Co., 942 F. Supp. 2d 388, 395 (S.D.N.Y. 2013) ("State judges are the best arbiters of state law and comity weighs in favor of state decisions being interpreted by state judges, especially when, as here, parallel proceedings in state and federal court could lead to disparate results in each venue."); Dedon GmbH v. Janus et Cie, No. 10 CIV. 04541 CM, 2010 WL 4227309, at *9 (S.D.N.Y. Oct. 19, 2010), aff'd, 411 F.

App'x 361 (2d Cir. 2011) ("Comity is an 'important and omnipresent factor' in parallel

litigation.") (quoting Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 160 (3d Cir. 2001)).

Also, the Court does not find the countervailing factors at issue in Metro Found.

Contractors, Inc., *supra*, to be present in this case.  Specifically, as described above, in Metro

Found. Contractors, Inc., the subcontractor was the plaintiff in *both* the state *and* federal court

action.  2011 WL 2150466, at *6.   As the plaintiff was the one who brought about the existence

of multiple proceedings, the court in Metro Found. Contractors, Inc. found that that the plaintiff

could not then "assert the existence of multiple proceedings — which it brought about — as a

reason to limit the available claims of third-party defendants who were brought into this lawsuit

which it commenced."  Id.; see also Metro Found. Contractors, Inc., 498 F. App'x at 103

(affirming the district court's finding that the existence of a parallel state court action did not

provide a compelling reason to decline supplemental jurisdiction because the subcontractor was

the plaintiff in both the federal and state court and was "therefore solely responsible for the

existence of the parallel proceedings.").

Here, by contrast, Bentivegna is *not* the plaintiff in the State Court Action. She is a

defendant in that action.  Therefore, unlike the plaintiff in Metro Found. Contractors, Inc.,

Bentivegna is not solely responsible for the fact that there are parallel proceedings.  Rather, the

Defendant PUIA, which decided to initiate suit in state court before the Plaintiff initiated this

action in federal court, is equally at fault for the existence of state and federal court proceedings.

Therefore, the Court does not find the reasoning of Metro Found. Contractors, Inc. to be

applicable to this case.

In sum, the Court finds that the pendency of the State Court Action is an "exceptional

circumstance" that provides "compelling reasons" within the meaning of Section 1367(c)(4) to

decline supplemental jurisdiction over the Defendants' counterclaims.  Further, in the Court's view declining supplemental jurisdiction is also consistent with the values of judicial economy, convenience, fairness, and comity.

### III. CONCLUSION

For these reasons, the Court grants the Plaintiff's Rule 12(b)(1) motion in its entirety and dismisses the Defendants' counterclaims for lack of subject matter jurisdiction.


**SO ORDERED.**
Dated: Central Islip, New York
June 21, 2016


 _/s/ Arthur D. Spatt_
ARTHUR D. SPATT
United States District Judge